IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DEBORAH RUTH SPICELAND,

        Plaintiff,

v.                                    CASE NO. 1:13-cv-114-SPM-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a closed period of disability and Social Security disability insurance benefits pursuant to Title II of the Social Security Act (the Act). Doc. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. Docs. 16, 20, 23. For the reasons discussed below, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and SSDI benefits on October 26, 2004, alleging disability commencing on May 1, 2003, due to depression. R. 41-45. Her claim was denied initially and upon reconsideration. R. 24, 30-31. Plaintiff requested a hearing which was held before Administrative Law Judge ("ALJ") Douglas A. Walker. R. 29, 189-224. The ALJ issued an unfavorable decision on March 14, 2007, and on January 25, 2008, the Appeals Council denied review. R. 4-7, 12-22.

Plaintiff appealed to this Court, and on September 23, 2009, the Court reversed and remanded the case for further administrative proceedings. R. 268-86. The Court determined that the ALJ did not properly explain why he rejected in part the opinion of a treating physician and partially rejected the opinion of another. The Court also determined that the ALJ's reasons for rejecting the opinion of a consultative examiner were not supported by substantial evidence. The Court determined that the case "should be remanded for the ALJ to address what weight he is affording the opinion of Dr. Addis . . . as well as a better reason for rejecting the opinion of Dr. Benet, if in fact, he chooses to reject his opinion since it appears that he in fact accepted some of his findings with regard to [Plaintiff's] social interaction abilities. Also, this cause should be remanded for use of a vocational expert to determine if jobs exist in significant numbers which Plaintiff could perform that require no contact with co-workers or supervisors," consistent with a nonexertional limitation found by the ALJ. *Id*.

On remand, the Appeals Council vacated the decision denying benefits and remanded the case back to ALJ Walker "for further proceedings consistent with the order of the court." R. 287-289. Plaintiff's counsel requested that a favorable decision be rendered without a second hearing, and advised the ALJ that Plaintiff had returned to part-time work and was seeking benefits for a closed period of disability from May 1, 2003, through December 31, 2008. R. 325-31.

The ALJ conducted a second hearing, at which Plaintiff and a vocational expert testified, on April 2, 2010. R. 478-506. On May 12, 2010, the ALJ issued an unfavorable decision, and on January 18, 2012, the Appeals Council denied review. R.

225-27, 239-53.  This appeal followed.[1]   Doc. 1.  Plaintiff contends that (1) the ALJ

failed to comply with this Court's remand order following the first appeal; and (2) the

ALJ failed to apply the correct legal standards when formulating her residual functional

capacity assessment regarding her moderate limitations in concentration, persistence,

or pace.  Doc. 16.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[1]The case was originally filed in the Middle District of Florida on March 1, 2012, and was transferred to this Court on June 17, 2013, following that Court's determination that Plaintiff resides in Gainesville, Florida.  Doc. 27.

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5]
However, the district court will reverse the Commissioner's decision on plenary review if
the decision applies incorrect law, or if the decision fails to provide the district court with
sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by
reason of any medically determinable physical or mental impairment that can be
expected to result in death, or has lasted or can be expected to last for a continuous
period of not less than twelve months.[7]  The impairment must be severe, making
Plaintiff unable to do his previous work, or any other substantial gainful activity which
exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a
claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a
claimant does not have any impairment or combination of impairments which
significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

### III.  SUMMARY OF THE RECORD

#### A. *Medical Evidence and Hearing Testimony*

Plaintiff was 46 years old when her disability insured status expired on June 30, 2004.  R. 41, 244.  She has a college education and past relevant work as a laboratory technician.  R. 62-66, 367A-367E.   The medical records that are relevant to her claim of disability due to depression may be summarized as follows.

Following a divorce, Plaintiff was treated by Dr. John Nelson from 1993 through 1997 for depression.  R. 106.  She experienced a re-exacerbation of her depression in 2003.  *Id.*   From March to December 2004, Plaintiff received counseling primarily by telephone from the Alachua County Crisis Center, stemming from situational events including an injury to her cat and relationship problems.  R. 109-47.

Plaintiff was treated by Asa L. Godbey, Jr., M.D., after Dr. Nelson's practice closed.  On November 5, 2004, Dr. Godbey wrote a treatment summary reflecting that Plaintiff's treatment included individual psychotherapy and psychotropic medications, and her response reflected "modest improvement."  R. 104-05.  Plaintiff had been diagnosed with recurrent major depressive disorder, and Dr. Godbey opined her prognosis was guarded for full remission.  *Id.*  He noted she "has restricted social/interpersonal activities" and "[s]he has not been able to sustain gainful employment since 1996."  However, her concentration was adequate, she was oriented in all spheres, an no significant compromise in memory was noted.  *Id.*

On February 9, 2005, Dr. Godbey completed a Treating Source Mental Health

Report at the request of the Division of Disability Determinations and confirmed

Plaintiff's diagnosis of recurrent major depressive disorder.  R. 104-05.  Plaintiff's mood

was depressed and her affect was appropriate for the expressed thought content.  She

experienced intermittent suicidal ideation without acknowledged plan or intent.  *Id*.  Dr.

Godbey opined that Plaintiff's concentration was adequate and she was oriented to

time, place, person, and purpose of the encounter.  She was neatly dressed and

groomed, and gait, station, speech, and coordination were grossly normal.  He opined

that since Plaintiff had "not sustained employment since 1996, implications are that a

40-hour week would be beyond her present capacities."  *Id*.

Dr. Godbey completed a Mental Residual Functional Capacity Questionnaire,

noting that Plaintiff experienced "chronic depression without evidence of psychosis, but

with intermittent suicidal ideation (albeit without plan or intent)."  R. 152-56.   Plaintiff

tolerated her prescription medications well.  He noted the following symptoms, which

varied in intensity:  anhedonia or pervasive loss of interest in almost all activities;

decreased energy; thoughts of suicide; blunt affect; feelings of guilt or worthlessness;

generalized persistent anxiety; mood disturbance; pathological dependence, passivity

or aggressivity; persistent disturbances of mood or affect; apprehensive expectation;

emotional withdrawal or isolation; intense and unstable interpersonal relationships and

impulsive and damaging behavior; emotional lability; deeply ingrained, maladaptive

patterns of behavior; and sleep disturbance.  R. 153.  He opined that Plaintiff was

seriously limited, but not precluded, in her ability to make simple work-related decisions;

complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; and set realistic goals or make plans independently of others.  R. 154-55.  He noted that Plaintiff "has difficulty making decisions independently, tends to withdraw in face of criticism.  Prefers structure. Has not dealt with situations requiring consistent, sustained effort in recent years."  R. 155.  With regard to Plaintiff's ability to perform semiskilled and skilled work, Dr. Godbey opined that Plaintiff was seriously limited, but not precluded from setting realistic goals or making plans independently of others.  Her ability to understand, remember, and carry out detailed instructions, and deal with the stress of semiskilled and skilled work was "limited but satisfactory."  He opined that Plaintiff would be absent from work about two days per month due to her impairment or treatment.  R. 156.  With regard to social functioning, that questionnaire reflected that Plaintiff could interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, use public transportation in a limited but satisfactory manner, and could adhere to basic standards of neatness and cleanliness in an unlimited or very good manner.  *Id*.

In an August 2006 report to Plaintiff's counsel, Dr. Godbey indicated that Plaintiff's condition had improved from 2004 through February 2005, due to medications.  Plaintiff was unable to resume normal social functioning, but had made

modest changes and was less depressed, anxious, and socially withdrawn.  R. 150-151, 418-419.

On June 23, 2005, Susan Addis, Ph.D. wrote a letter noting she first saw Plaintiff on December 22, 2004 and had been treating her weekly since that time.  R. 107. Plaintiff  "presented as quite tearful, very depressed" and reported feeling depressed for quite some time. *Id.*  Plaintiff's depression was attributed to situational problems such as the dissolution of her marriage, loss of employment, and problems with a relationship she entered into after her divorce.  Plaintiff was physically fit, but had difficulty relating to others in social situations, although she had made improvements. She stated that Plaintiff would be unable to be employed full time in a "traditional work setting."  Dr. Addis diagnosed:  chronic recurrent major depressive disorder, generalized anxiety disorder, dependent personality disorder, problems with primary support group, problems related to social environment, occupational problems, and economic problems.  R. 107-108.

On June 29, 2005, a non-examining state agency consultant, Gary W. Buffone, Ph.D., concluded that the record was insufficient to determine if Plaintiff was disabled prior to her date last insured.  He observed that while Plaintiff's treatment notes in early 2004 indicated that her mood was depressed at times, she stayed busy swimming, playing golf, going to clubs, painting, and doing ceramics.  R. 102.

On September 23, 2006, Dr. Addis stated that Plaintiff had difficulty relating to others in social situations, though she had made some improvements over the course of her treatment.  She did not feel that Plaintiff would be able to sustain working full

time.  Dr. Addis noted that Plaintiff was seeking disability benefits based on her major depression, but could not address Plaintiff's current state of mental health since she had not seen Plaintiff for over a year.  R. 170.

In January 2007, Plaintiff saw consultative psychologist William E. Benet, Ph.D., Psy.D.   R. 158-163.  In his report of his mental status examination of Plaintiff, Dr. Benet noted Plaintiff was alert, oriented, healthy, well-nourished, neatly dressed and groomed, had driven herself to the appointment, and presented as friendly and cooperative.  She also was subdued and quiet, and looked sad and depressed, but her eye contact was good, gait and motor activity were normal, and speech was clear and coherent.  Plaintiff reported a history of depression and that she was experiencing depressed mood, feelings of worthlessness and helplessness, weepy episodes, social withdrawal, insomnia/hypersomnia, passive suicidal thoughts and paranoid thoughts. Dr. Benet's examination report concluded that Plaintiff's depressive disorder was "moderate."  He judged Plaintiff unable to perform work-related mental tasks involving memory, sustained concentration and persistence, social interaction and adaptation, and noted that the prognosis for significant improvement is poor.  *Id.*

Dr. Benet administered the Wechsler Memory Scale-III test and he opined Plaintiff's "scores suggested significant impairment relative to her general intellectual ability, which was estimated to be above average."  R. 161.  He additionally administered the Minnesota Multiphasic Personality Inventory-2 test, but concluded that the a likely invalid profile was obtained from the test.  *Id.*  Retesting of the Wechsler

Memory Scale-III was deemed necessary to determine whether the impairment suggested by the testing reflected persistent impairment or transient impairment related to extreme anxiety and depression, or possibly dissimulation for the purpose of secondary gain. *Id*.

Dr. Benet also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form. R. 165-167. He checked that Plaintiff had marked limitations in her ability to understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; the ability to make judgments on simple work-related decisions; interact appropriately with supervisors; interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. Plaintiff had a moderate limitation in her ability to interact appropriately with the public. R. 166.

On December 11, 2007, Plaintiff began seeing Ken Grauer, M.D. at Shands Clinic. R. 464-65. Dr. Grauer noted she presented "tearful and very depressed" and she "has restricted social and interpersonal activities." R. 464. Plaintiff continued to see Dr. Grauer for medication management and physical complaints through February 2010. R. 426. In December 2007, Plaintiff also began seeing Tom Ward, MSW. R. 474. On March 26, 2010, Mr. Ward noted he had seen Plaintiff for 63 psychotherapy sessions and she had been diagnosed with recurrent major depressive disorder and social phobia. His prognosis was that Plaintiff's conditions would indefinitely continue to affect social functioning and her ability to obtain and maintain substantive employment.

*Id.*

At the second ALJ hearing, Plaintiff testified that in 2008 she was able to go back to work part-time as a laboratory technician in a plant pathology lab at the University of Florida, Institute for Food and Agricultural Science.  In that position, she did not have coworkers and had limited, weekly contact with her boss.  R. 491-92.

The ALJ elicited testimony from a vocational expert (VE), David Pique, at the hearing.  The ALJ asked the VE to assume an individual who could sit six hours in an eight-hour work day; stand, walk six hours; lift 10 pounds frequently and 20 pounds occasionally; limited to simple, repetitive tasks, low stress work, no contact with the public, limited contact with supervisors (versus "no contact") "because obviously an individual is going to have some contact."  The individual could not work in close proximity to co-workers, and could not have direct contact with the public.  The ALJ clarified that "no close proximity to co-workers" meant that the individual would not be working as a team member.  The VE identified positions that fell within the parameters of unskilled or lower-level semi-skilled work commensurate with the hypothetical, including bench work occupations that do not require team production, some dispatch jobs, or telephonic work and simple clerical detail work.  Examples included assembler of printed products, assembler of plastic hospital products, and dispatcher.

## B.  *Findings of the ALJ*

The ALJ's findings are set forth at R. 244-53.  The ALJ determined that Plaintiff had the severe impairment of major depressive disorder, but that she did not have an

impairment or combination of impairments that met or equalled the listings.  The ALJ determined that Plaintiff had mild restriction in activities of daily living and mild difficulties in social functioning.  The ALJ determined that Plaintiff had the RFC to perform light work limited to sitting, standing, and/or walking for six hours out of an eight-hour workday, lifting only 10 pounds frequently and 20 pounds occasionally.  He found that Plaintiff was limited to the performance of simple, repetitive tasks in a low stress environment, with limited contact with supervisors, that she should not work in close proximity to co-workers (i.e. as a team player), and should avoid direct contact with the public.  The ALJ found Plaintiff's allegations regarding the limiting effects of her symptoms to be not fully credible to the extent inconsistent with the RFC.

The ALJ partially credited Dr. Addis' opinion that Plaintiff might not be suited for full time work in a "traditional" work setting, but noted that the opinion did not necessarily preclude work in a specific work setting that accounted for her non-exertional limitations.

The ALJ accorded some, but not substantial, weight to Dr. Benet's report, noting that Dr. Benet questioned the validity of his testing and that he assessed Plaintiff's depressive disorder as "moderate" in his report of her mental status examination, which contrasted with his checklist assessment of "marked" limitations.  The ALJ concluded that Dr. Benet's assessment of "marked" limitations was not consistent with his consultative examination report or with Dr. Godbey's February 2005 RFC, which concluded that Plaintiff was limited, but not precluded from, performing work-related tasks.  The ALJ concluded that Dr. Benet's checklist assessment stemmed from the

tests he administered during his examination, rather than his mental status examination findings, because the checklist was inconsistent with his examination report. The ALJ noted that Dr. Benet admitted that his testing was likely invalid. He noted that Dr. Benet described Plaintiff as alert, oriented, healthy, well-nourished, neatly dressed and groomed, friendly and cooperative, with good eye contact, clear speech, suicidal thought with no plan or intent, and that her thinking was organized and goal directed. He further noted that Dr. Benet had reported that Plaintiff's sensorium was intact, attention and concentration were fair, short-term memory was average, intermediate memory was fair, verbal reasoning was above average, and judgment appeared adequate. *Id*. at 250.

The ALJ noted that Plaintiff had progressed under treatment with Dr. Godbey, and granted credence to Dr. Godbey's reports. The ALJ concluded that Dr. Godbey's assessment of Plaintiff's functional ability more consistently reflected her capabilities from her alleged onset date through the date last insured. That assessment found that Plaintiff was seriously limited "but not precluded from" performing work-related tasks necessary to perform semiskilled and skilled work, including making work-related decisions, completing a normal workday and workweek, performing at a consistent pace, accepting instructions, and getting along with co-workers or peers. With regard to social functioning, that questionnaire reflected that Plaintiff could interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, use public transportation in a limited but satisfactory manner, and could adhere to basic standards of neatness and cleanliness in an unlimited or very good manner.

Dr. Godbey noted improvement in Plaintiff's condition from 2004 to February 2005, attributed to medications, and that she had made modest improvements in social functioning.

The ALJ determined that Plaintiff's nonexertional limitations preclude her from her past relevant work as a lab technician, but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, based on the testimony of the VE, as summarized above.

## IV. DISCUSSION

### A. *Whether the ALJ Failed to Comply with the Court's Remand Order*

Plaintiff contends that the ALJ failed to comply with the Court's remand order following her first appeal from the denial of benefits. In that Order, the Court stated in part that "this cause should be remanded for use of a vocational expert to determine if jobs exist in significant numbers which Plaintiff could perform that require no contact with co-workers or supervisors." R. 285-86. Following the Court's remand, the Appeals Council remanded the case to the same ALJ, stating "the Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court." R. 287. Plaintiff notes that the ALJ's RFC in the first decision found that Plaintiff was moderately limited in her ability to maintain social functioning, and limited her to "low stress work with no contact with the public and no contact with supervisors/co-workers."

R. 19.  Plaintiff contends that rather than following the remand order, the ALJ "changed the facts" to find that Plaintiff should not work in close proximity to co-workers, or as a "team player," which permitted the VE to identify jobs that she could perform.  Plaintiff contends that it was error for the ALJ to "chang[e] the facts until he could deny her claim," and that substantial evidence does not support the finding that her only limit is that she is not a "team player."  Doc. 16.

In response, the Commissioner argues that the ALJ was not required under the remand order to find that Plaintiff could have no contact with coworkers and supervisors because the Appeals Council vacated the prior ALJ's decision, rendering it void.  Doc. 20.  The Commissioner contends that the ALJ was not bound by the findings in the vacated hearing decision.  *Id*.

Plaintiff's argument wholly overlooks the fact that the Court's remand order did not direct that the case was being remanded *solely* for the ALJ to obtain testimony from a VE relating to Plaintiff's limitations in social functioning determined by the ALJ. Rather, the Court found that the ALJ failed to adequately explain his reasons for rejecting the opinions of treating physicians, specifically Dr. Addis, and that the reason offered for rejecting the opinion of the consultative examiner, Dr. Benet, concerning his assessment of Plaintiff's limitations in social interactions was not supported by the record.  R. 285-86.  The remand for VE testimony was secondary to this finding.  *See id.*

Although the Court's remand order does not expressly state as much, it is clear

that it was made pursuant to sentence four of Section 405(g) of the Act. "Section

405(g) permits a district court to remand an application for benefits to the

Commissioner . . . by two methods, which are commonly denominated 'sentence four

remands' and 'sentence six remands,' each of which remedies a separate problem. The

fourth sentence of section 405(g) provides the federal court 'power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause

for a rehearing.'" *Ingram v. Commissioner of Social Sec. Admin*. 496 F.3d 1253, 1261

(11th Cir. 2007).[22]   When a case is remanded, "the Appeals Council, acting on behalf of

the Commissioner, may make a decision, or it may remand the case to an

administrative law judge with instructions to take action and issue a decision or return

the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983.

If the case is remanded by the Appeals Council to the administrative law judge, the

process starts over again. *Id*. § 404.984.

The Court directed that the ALJ must state the weight afforded Dr. Addis' opinion

and the reasons therefor, and articulate a better reason for rejecting Dr. Benet's

opinion, "*if in fact, [the ALJ] chooses to reject his opinion,*" on remand. R. 285-86.   It is

thus clear that the Court's remand order contemplated that the ALJ's determination of

---

[22]The sixth sentence of section 405(g), which is not at issue here, provides a federal court the
power to remand the application for benefits to the Commissioner for the taking of additional evidence
upon a showing "that there is new evidence which is material and that there is good cause for the failure to
incorporate such evidence into the record in a prior proceeding."

Plaintiff's functional abilities stemming from limitations in social interaction could change

following remand and re-evaluation of the medical evidence. *See id*. A change in the

ALJ's determination of those limitations would necessarily affect the contents of any

hypothetical posed to the VE.

On this record, the Court concludes that the Commissioner complied with the

Court's remand order and Social Security regulations by remanding it to the ALJ with

instructions to undertake "for further proceedings consistent with the order of the court."

R. 287-289. The ALJ's re-evaluation of the evidence resulted in a different

assessment of Plaintiff's limitation in social functioning, which further necessitated a

different hypothetical to the VE.

In making the finding the Plaintiff had only mild limitations in social functioning,

the ALJ noted Plaintiff's testimony at the first hearing that while she struggled with

depression and tearfulness, she was able to care for her pets, paint, do ceramics, and

go on trips with her friend. At the time of the second hearing, Plaintiff still struggled with

depression but she had a part-time job. The ALJ also pointed to Dr. Addis' finding that

Plaintiff had made "improvements" in her ability to relate to others in social situations.

He partially credited Dr. Addis' opinion that Plaintiff may not be suited for work in a

"traditional work setting," but pointed to the VE's testimony as support for a conclusion

that she could perform work in a setting that accounted for her specific limitations in

social functioning. The ALJ gave "some" weight to Dr. Benet's consultative examination

report, while affording "very little weight" to his assessment of "marked" nonexertional

limitations and "moderate" limitations in interacting with the public, as set forth on the "medical source statement", because that assessment was based on testing that Dr. Benet considered likely invalid.  The ALJ noted Dr. Godbey's statement that Plaintiff had progressed in her treatment.  The ALJ determined that Dr. Godbey's Mental RFC Questionnaire, prepared in February 2005, reflected Plaintiff's capabilities during the relevant period.  With regard to social functioning, that questionnaire reflected that Plaintiff could interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, use public transportation in a limited but satisfactory manner, and could adhere to basic standards of neatness and cleanliness in an unlimited or very good manner.  R. 245-51.  On this record, the Court finds that the ALJ's determination that Plaintiff is only mildly limited in her social functioning and could not be a team player is supported by substantial evidence.

## B.  *Whether the ALJ Erred Regarding Moderate Limitations in Concentration, Persistence, and Pace*

Plaintiff contends that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, or pace, in formulating the hypothetical posed to the VE at the second hearing, although the ALJ had found such limitations at Step Three of the sequential evaluation, in contravention of *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011).  Doc. 16.

Generally, when posing a hypothetical to a VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's

impairments included in the RFC.[23]  The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must set out all of the claimant's impairments.[24]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[25]

If an ALJ determines a claimant has moderate difficulties in concentration, persistence or pace, then the ALJ's hypothetical to a VE must account for those difficulties.[26]  The ALJ need not include, however, such limitations explicitly in the hypothetical.[27]  Instead, "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations" in concentration, persistence or pace when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work" despite those limitations.[28]  Hypotheticals also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions

---

[23] <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).

[24] <u>Wilson v. Barnhart</u>, 284 F3d.1219, 1227 (11th Cir. 2002).

[25] <u>Wright v. Comm'r of Soc. Sec.</u>, 327 F. App'x 135, 137 (11th Cir. 2009).

[26] <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2011.)

[27] <u>Id.</u> at 1180.

[28] <u>Id.</u>

otherwise explicitly account for these limitations."[29]

In this case the ALJ's hypothetical to the VE proposed an individual who is limited to "simple, repetitive tasks," low stress, and not in close proximity to co-workers. In responding, the VE reiterated that he was considering activities that were "simple, repetitive, one-two-three step, essentially unskilled or lower level semi-skilled work . . . " The VE went on to identify jobs that fell within the light exertional and "unskilled" level, including assembler of printed products, assembler of plastic hospital products, and dispatcher, maintenance service, a "lower level semi-skilled, essentially one-two-three step repetitive employment," all of which exist in significant numbers in the regional and national economies.   R. 501-03.

The Court concludes first that the ALJ's RFC determination properly accounted for the ALJ's findings that Plaintiff was moderately limited in concentration, persistence, and pace.  The RFC appropriately accounted for these limitations by including the non-exertional limitations that Plaintiff was limited to "simple, repetitive tasks in a low stress environment, . . . limited contact with supervisors, . . . [no] close proximity to co-workers . . . avoid direct contact with the public."  R. 246.   Each of these limitations was included in the hypothetical to the VE.  R. 501.  Thus, the ALJ's RFC determination and hypothetical to the VE properly accounted for Plaintiff's moderate impairments in concentration, persistence, and pace, in light of the evidence of record and case law in the Eleventh Circuit.  *See Jarrett v. Comm'r of Social Sec.*, 422 Fed. Appx. 869, 872

---

[29] Id.

(11th Cir. 2011) ("an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform tasks despite concentration deficiencies.")  The ALJ's findings are consistent with the medical evidence of record, including the opinion of Plaintiff's treating physician, Dr. Godbey, that she was not precluded from  performing work-related tasks necessary to perform semiskilled and skilled work.  *See* R. 155-56.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Gainesville, Florida, on December 27, 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.